# COURT OF COMMON PLEAS OF BALTIMORE CITY.

Filed January 6, 1916.

## HENRY P. EYSINK

### VS.

### VINCENT FLACCOMIO AND LEE SONNEBORN, TRADING AS LEE SONNEBORN & COMPANY.

*John S. Young, Eldridge Hood Young* and *Louis Hollander* for plaintiff.

*Harry B. Wolf, Charles F. Stein* and *Sykes & Nyburg* for defendants.

DAWKINS, J.—

In passing upon the motion in arrest of judgment it might be profitable, first to consider the effect of the prayers granted at the request of the defendants. Although there were several counts in the narr., the defendant pleaded the general issue to the whole narr. At the trial each of the defendants asked for separate instructions as to each count. The Court granted

these instructions so that the jury could in effect find for the plaintiff, if at all, only under the fourth count. This was the one, and only one, material issue. Under our present practice it would seem quite useless to have verdicts entered for the defendant on the other three counts. The narr. stated in different ways the alleged improper sale of mixed liquor to the plaintiff, that was the issue.

The case in 31 Md., Smith vs. Wood, was a replevin suit. Separate pleas were filed alleging ownership in different parties, as well as the plea of non cepit, making several issues. In 6 Md., Hatton vs. McClish, there were two distinct pleas and two separate issues.

In Kierle vs. Shriver, 11 G. & J. 405, there were two distinct pleas, non assumpsit and limitations, making two separate issues. It would seem that the case here presented is therefore not a similar one to those cited.

Whilst the defendant Flaccomio rests his motion for a new trial solely upon the facts as disclosed by the evidence, yet as the alleged improper omission in the second prayer was alluded to in the discussion of the motions, it might be advisable to refer to it. The plaintiff offered evidence tending to prove that the whiskey sold to him had in it the substance that caused the injury to him. That it was bought by him from one defendant, who in turn had bought it from the other defendant. That it was changed by each defendant or his employes from the container in which he received it to another before putting it out for sale. Both defendants denied putting the injurious drug in the whiskey. There was no testimony, therefore, upon which the jury could say that the change, if any, was made while the article was in the possession of either defendant, but it might have been done by either or his agents. To have modified the prayer as suggested would have allowed the jury purely to speculate as to who did the improper mixing, so that as the prayer was based upon the theory that the goods were not sold in an unbroken package a responsibility must rest upon the defendants, each of whom, in effect, warranted its purity by their very manner of handling and selling it.

The case might work, as was so ably argued at the hearing of the motion, a great hardship upon an innocent defendant, but it would seem difficult to prevent this. It would certainly be equally a hardship upon this plaintiff to have to suffer this irreparable injury, which must go with him through life, if the article bought of these defendants, however ignorant they might be of its dangerous character, caused his injury.

There was evidence offered at the trial tending to establish the plaintiff's contention that the liquor was bought by him from one of the defendants, and that he in turn bought it from the other defendant under the name of "Blended Sherwood Whiskey"; that one defendant, or his servants or employes, drew it from barrels; that the retailer drew it from demijohns and put it in bottles, placing on the bottle his name on a label furnished by the other defendant at the time of sale; that sundry employes or agents of both defendants handled the goods before it reached the consumer; that there was wood alcohol in the liquor and that that caused the blindness to be produced; that Dr. Woods so diagnosed the case before he got the report from the pathologist; that the goods sold to the plaintiff and the goods sold to Arnold and others and later tested was of the same lots bought of one defendant and sold to the other; and that whilst the name of a brand of liquor was used, the naming and packing for sale of these particular packages seemed to have been in the hands of the defendants. Against this we have the denial of the defendants that they, or either of them, put any of the deleterious liquor in the goods sold.

It was clearly a matter for the jury, and they having decided for the plaintiff, and there being no excessive damages specially alleged, the verdict should stand, unless for some of the other reasons urged it should be set aside.

It was suggested that the jury was kept out too long and were practically forced to agree upon a verdict. They were in their room for seven hours considering a case that had taken practically three weeks to try and that took counsel (including arguments on prayers) several days to argue. They were allowed to have what they wished to eat. So far as is known they were

in every way comfortable in the jury room. The jury could not be released and brought together again at another time. No complaint as to any undue confinement has come to the attention of the Court. I can not feel that this suggestion should be considered in determining the motion.

Other reasons suggested for granting the motion were the improper reference to the fact that Dr. Harlan had examined the plaintiff and yet he was not called as a witness; and the improper remarks of counsel for the plaintiff in addressing the jury in suggesting that there should be a verdict imposed as a punishment.

Dr. Harlan examined the plaintiff at the request of the defendants, they did not call him to testify, then he was summoned by the plaintiff to bring records, etc., from the hospital, but in response to that summons another gentleman produced the records, the production of which was manifestly the only purpose for which the plaintiff desired Dr. Harlan's attendance, hence the fact that the doctor was not called by the defendant was a fair subject of comment, especially as the circumstances in regard to the examination made by him came out in the testimony.

Notwithstanding the disclaimer of counsel, if any improper language was used that could in any way inflame or improperly influence the jury, the verdict should be set aside.

What are the facts?

The plaintiff earned $15.00 per week, he had a life expectancy of 34 years, he is shown to be practically blind and unable to earn a living, so that a verdict (if he was entitled to recover) in the amount rendered by the jury would not seem to be excessive or brought about by any undue inflammatory talk. When this objectionable comment was made, attention of counsel was called to it and he refrained from any further remarks of that character, and stated that he did not wish to have the jury understand his remarks as asking for a verdict in the nature of punishment, so that this would not appear to have had any effect on the verdict.

For reasons given the motion in arrest of judgment and the motion for a new trial will be overruled.